UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MERCEDES GUODOY ARANA,

                Petitioner,

      -v-                                 No.  20 CV 4104-LTS

THOMAS DECKER, et al.,

                Respondents.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

        Mercedes Guodoy Arana ("Mr. Arana" or "Petitioner") petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. section 2241, challenging his detention by United States Immigration and Customs Enforcement ("ICE") under 8 U.S.C. section 1226(a) as unduly prolonged, and arguing that he is now entitled to: a bond hearing in which the Government bears the burden of proving by clear and convincing evidence that detention is warranted; consideration of alternative conditions of release and his ability to pay at such a bond hearing; and an award of reasonable attorney's costs and fees pursuant to the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412.  (Docket entry no. 1, the "Petition.")  Mr. Arana's Petition was filed approximately three months after he had been taken into ICE custody, and asserted that the bond hearing he had received, in which the burden of demonstrating a lack of risk of flight and danger to the community had been placed on him, had violated his right to due process.  His agency appeal from that determination was pending with the Board of Immigration Appeals ("BIA") at the time the Petition was filed.  Respondents filed

their opposition to the Petition on June 10, 2020.  (Docket entry no. 7, the "Opp.".)  Mr. Arana filed a reply on June 12, 2020. (Docket entry no. 9.)

On July 8, 2020, the Court issued a memorandum opinion and order staying Mr. Arana's Petition pending the BIA's decision on his appeal of the Immigration Judge's denial of bond.  (See docket entry no. 10, the "July Order".)  On September 29, 2020, the parties jointly filed a letter informing the Court that the BIA had dismissed Mr. Arana's bond appeal.  (See docket entry no. 11 at Ex. A, the "BIA Decision".)

On October 28, 2020, counsel for Petitioner filed a letter noting the Second Circuit's decision in Velasco Lopez v. Decker, 978 F.3d 842 (2d Cir. 2020) ("Velasco Lopez"), in which the Court of Appeals had held that an ICE detainee's due process rights had been violated by an unduly prolonged detention under section 1226(a), and affirmed a district court decision ordering the Government to provide the detainee with a bail hearing in which the Government bore the burden of proving the need for detention by clear and convincing evidence. (See docket entry no. 13.)  Petitioner argues that, based on the facts of his own situation and the reasoning of the Velasco Lopez court, he is similarly entitled to a burden-shifted hearing as remediation for a violation of his right to due process.  On November 2, 2020, the Respondents filed a letter response asserting that the Velasco Lopez decision is not dispositive of the issues raised in the Petition because Mr. Arana's detention has not been unduly prolonged.  (See docket entry no. 15, "Resp. Ltr.")  At the Court's direction, Petitioner filed a response to the Government's submission.  (See docket entry no. 17, "Pet. Ltr.")

The Court has jurisdiction of this Petition pursuant to 28 U.S.C. sections 1331 and 2241.  The Court has reviewed carefully all of the parties' submissions in connection with the instant Petition and, for the reasons that follow, Mr. Arana's Petition is granted.

BACKGROUND

The Court assumes the parties' familiarity with the background facts of this case, which are laid out in detail in the July Order.  The following facts are relevant for the purpose of determining the instant Petition.

Mr. Arana is a 38-year-old citizen of Guatemala who entered the United States in 2000, and has been living in New York since that time.  (Petition at ¶¶ 3, 13.)  Prior to his ICE detention, Mr. Arana worked in construction and lived with his U.S. citizen partner, her thirteen-year-old U.S. citizen daughter, and his partner's elderly, bedridden Lawful Permanent Resident mother, Ms. Gutierrez.  (Id. at ¶¶ 14, 16-17.)  Mr. Arana assisted in caring for his partner and her family, including by helping to pay for rent and utilities and taking Ms. Gutierrez to her doctor appointments.  (Id. at ¶¶ 2021.)  On December 22, 2019, Mr. Arana was arrested for the first time in the United States and charged with aggravated driving while intoxicated, driving while intoxicated, and driving without a license in violation of New York state traffic laws in Rockland County, NY.  (Id. at ¶ 18; Opp. at 2.)  The charges are currently pending.  (Opp. at 2.)  The Rockland County's District Attorney's Office has offered to resolve Mr. Arana's case with a plea to a violation, which is a less serious offense than a misdemeanor, of driving while ability impaired.  (Petition at ¶ 18.)  Following his arrest, Mr. Arana enrolled in alcohol use treatment classes and he attended all of his classes prior to his ICE detention.  (Id. at ¶ 19.)

On March 4, 2020, ICE arrested Mr. Arana, placed him in removal proceedings pursuant to Immigration and Nationality Act ("INA") section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), and detained him at the Orange County Correctional Facility in Goshen, NY, pursuant to 8 U.S.C. § 1226(a).  (Id. at ¶¶ 3, 22; Opp. at 2.)  On May 4, 2020, the Immigration Judge ("IJ") held a bond hearing at which the IJ required Mr. Arana to prove by a preponderance

of the evidence that he was neither a danger to the community nor a flight risk.  (Petition at ¶ 25; Opp. at 16.)  Mr. Arana presented 86 pages of evidence and testified in support of his request for bond.  (Petition at ¶¶ 25, 27.)  The Government did not submit any evidence in support of its position that bond should be denied.  (Id. at ¶ 26.)  After hearing the testimony and arguments, the IJ rendered an oral decision denying bond, concluding that Mr. Arana had not established that he was not a danger to the community.  (Id. at ¶ 27.)  The IJ did not address the issue of whether Mr. Arana posed a risk of flight. (Id. at ¶ 28.)

On September 22, 2020, the BIA dismissed Mr. Arana's appeal, finding that the IJ had properly determined that Mr. Arana is a danger to the community "in light of the serious nature of the [driving-related] arrest and charges[.]"  (BIA Decision at 2.)  The BIA found that Mr. Arana "did not meet his burden of establishing that he will not be a danger to others if he is released on bond" and dismissed Mr. Arana's appeal.  (Id. at 1-2.)

On August 14, 2020, the IJ held an individual hearing on the merits of his application for relief from removal, at the conclusion of which the IJ denied Mr. Arana's application for relief and ordered him removed.  (Resp. Ltr. at 2.)  On September 9, 2020, Mr. Arana filed an appeal of that decision with the BIA.  (Id.)

DISCUSSION

Petitioner asserts that his continued detention pursuant to 8 U.S.C. section 1226(a) violates his procedural due process rights under the Constitution because his detention has been unduly prolonged, and thus the Fifth Amendment requires that he be afforded a new bond hearing at which the Respondents must prove by clear and convincing evidence that continued

detention is justified.[1]  The Constitution mandates that "[n]o person shall . . . be deprived of life,

liberty, or property, without due process of law."  U.S. Const. amend V.  This protection applies

to both citizens and non-citizens alike.  Zuniga-Perez v. Sessions, 897 F.3d 114, 122 (2d Cir.

2018).  While "[d]etention during removal proceedings is a constitutionally valid aspect of the

deportation process," Velasco Lopez at 848, "the Fifth Amendment protects aliens in deportation

proceedings from procedures that transgress the fundamental notions of 'fair play' that animate

the Fifth Amendment."  Rajah v. Mukasey, 544 F.3d 427, 441 (2d Cir. 2008).

The Velasco Lopez Decision

     In Velasco Lopez, the United States Court of Appeals for the Second Circuit

addressed the "'important constitutional limitations'" on the Government's "constitutionally

valid" statutory power to detain individuals pending removability proceedings.  Velasco Lopez at

848 (quoting Zadvydas v. Davis, 533 U.S. 678, 695 (2001) ("Zadvydas")), concluding that

"individuals subject to prolonged detention under § 1226(a) must be afforded process in addition

to that provided by the ordinary bail hearing."  Velasco Lopez at 854.  The Court of Appeals

---

[1]   In his Petition, Mr. Arana initially argued that he is being detained unconstitutionally
because the burden placed on him at his May 2020 bond hearing to prove that he is not a
danger to the community or a risk of flight deprived him of his due process rights under
the Fifth Amendment.  However, after the Second Circuit issued its decision in Velasco
Lopez, Petitioner refocused his argument onto the length of his ongoing detention
following proceedings in which he had borne the burden of proof, and asserts that "[t]he
petitioner's claim in Velasco Lopez is identical to the legal claim raised by Mr. Guodoy
Arana – that continued detention pursuant to 8 U.S.C. section 1226(a) violate[s] his
procedural due process rights under the Constitution, and the only remedy is a bond
hearing at which DHS justifies ongoing incarceration by clear and convincing evidence."
See Pet. Ltr. at 3.  Given that he was detained at the time the petition was filed, and
remains so, and his goal – a detention hearing at which the Government bears the burden
of proof – remains the same, the Court finds that his invocation and application of the
Velasco Lopez analysis to his continuing detention is within the scope of the issues raised
in his Petition and can properly be addressed in light of the current length and
circumstances of his detention.

found that the detention of the petitioner alien, who had been held in a penal facility that housed convicted criminals "for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process[,]" and affirmed the district court's conclusion that due process required a new bond hearing at which the Government bore the burden of justifying continued detention by clear and convincing evidence.  Id. at 855.

In making its determination regarding the sufficiency of the procedural safeguards afforded to Mr. Velasco Lopez in connection with his continued detention, the Second Circuit applied the three-factor balancing test laid out by the Supreme Court in Mathews v. Eldridge, which requires consideration of the following: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Velasco Lopez at 851 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

The court characterized personal liberty—the private interest at issue—as "the most significant liberty interest there is—the interest in being free from imprisonment[,]" and emphasized that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Velasco Lopez at 851 (citing Hamdi v. Rumsfeld, 542 U.S. 507, 529, (2004); Jones v. United States, 463 U.S. 354, 361 (1983)) (internal quotation marks omitted).  In Mr. Velasco Lopez's case, the court found that the petitioner had experienced "substantial" deprivation where "he spent nearly fifteen months incarcerated in the Orange County Correctional Facility, where he was held alongside criminally charged defendants and those serving criminal sentences" and, as a result, "could not maintain employment or see his

family or friends or others outside normal visiting hours[,]" use a cell phone, or access the internet and telephone without restriction.  Velasco Lopez at 851.

   The Court of Appeals found that the second Mathews factor, that is, "the risk of an erroneous deprivation of such private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," also weighed heavily in the petitioner's favor.  Id. at 852.  Once the district court had granted Mr. Velasco Lopez's petition and directed the Government to provide him with a new detention hearing with the Government put to the clear and convincing evidence standard, the IJ found that the Government could not meet that burden and ordered Mr. Velasco Lopez released.  Id. at 848.  The determination that Mr. Velasco Lopez was neither a flight risk nor a danger to the community despite three prior arrests, a conviction for driving while ability impaired, pending charges for aggravated unlicensed operation and driving while intoxicated, and dismissed charges for a bar fight, was demonstrative of the "value for due process purposes of the burden-shifting required by the habeas court."  Id. at 853.  The Second Circuit noted that "[p]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process[,]" and found that the procedures underpinning Mr. Velasco Lopez's lengthy incarceration markedly increased the risk of error where he bore the burden of proof despite his detention and the Government's superior access to relevant information.  Id. at 852.  Having considered these facts, the Court of Appeals held that the district court's order requiring a bond hearing with a shifted and heightened burden "mitigated the risk of error that [the second] Mathews factor requires [courts] to consider."  Id. at 854 (citing Demore v. Kim, 538 U.S. 510, 527 (2003) ("Demore")).

   In considering the third Mathews factor—the Government's interest and any additional burdens imposed by the additional or substitute procedural requirements proposed—

the Second Circuit acknowledged that the Government has important interests in detaining noncitizens under section 1226 pending removal proceedings in order to prevent absconding and the commission of crimes.  Id.  The Government had not articulated, however, any "interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight," and the court found that "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose."  Id.

        Finally, the court found that consideration of the public interest, including considerations of "'the administrative burden and other societal costs that would be associated with'" the additional process, also "cut[ ] strongly in favor of [Mr.] Velasco Lopez."  Id. at 855 (quoting Mathews, 424 U.S. at 347).  "When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time . . . it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees[,]" which does not serve the public interest.  Id.  Accordingly, the court concluded, while the Government's interest may initially outweigh the detainee's liberty interest in connection with a short-term deprivation, "that balance shift[s] once his imprisonment bec[omes] unduly prolonged."  Id.  The new bond hearing ordered by the district court was held appropriate to address the violation of the petitioner's due process rights by the prolonged detention without sufficient process, and the court further held that requiring the Government to meet a clear and convincing standard of proof was necessary because "it is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty."  Id. at 856.

Mr. Arana's Due Process Claim

      Like Mr. Velasco Lopez, Mr. Arana contends that his detention has been unduly prolonged and that he is entitled to a bond hearing at which the Respondents bear the burden of proving by clear and convincing evidence that continued detention is warranted.  In accordance with Velasco Lopez, the Court applies the Mathews v. Eldridge balancing test to determine "when, under our constitutional system, judicial-type procedures must be imposed upon" the administrative detention system under which Mr. Arana is being held.  Velasco Lopez at 851 (internal quotation marks and citation omitted).

      Mr. Arana's interest at stake here is in being free from imprisonment, that is, "the most significant liberty interest there is."  Id.  He has been deprived of his personal liberty for more than nine months, in the same correctional facility in which Mr. Velasco Lopez was held— one that also holds "criminally charged defendants and those serving criminal sentences."  Id. Like Mr. Velasco Lopez, Mr. Arana has been unable to see family and friends outside of visiting hours, engage in normal activities permitted by life outside of a penal facility, and has limited access to communications facilities.  Moreover, as a result of the ongoing COVID-19 pandemic, Mr. Arana's ability to take measures necessary to protect himself from infection in a prison setting is inherently restricted.  The deprivation of this most important human liberty is and remains substantial.  His appeal of the IJ's denial of bond has been denied and he has no further internal avenues for review of that decision; his detention, absent a grant of the writ, will continue pending the completion of appeals of the order of removal.  That process could take months or years.  As the Velasco Lopez court observed, "[t]he longer the duration of incarceration, the greater the deprivation."  Id. at 852.  This first factor thus weighs strongly in favor of Mr. Arana.

The second factor – risk of an erroneous deprivation – also weighs in favor of Mr. Arana.  While, unlike the Velasco Lopez court, this habeas court has had no opportunity to see what the outcome of a burden-shifted hearing would be, the submissions here suggest that Mr. Arana has tendered a factual record that the Government might find difficult to overcome if it had to demonstrate affirmatively that Mr. Arana poses a risk of flight or danger to the community necessitating his continued detention.  As noted above, he produced 86 pages of documentation, including supportive letters from family and community members; evidence that, after his arrest, he engaged diligently in alcohol abuse therapy and made arrangements to ensure that he would have no need to drive; and evidence of the vital roles he plays in his family. Against this, the mere fact of a charge that he may be able to resolve as a violation may not be sufficient to carry the Government's burden of demonstrating that Mr. Arana poses a risk of flight or danger to the community.  The process thus far awarded to him has posed a substantial risk of an erroneous determination.  To the extent that a streamlined process placing the burden on him may have been warranted near the commencement of detention in order to ensure that he did not abscond or endanger the community before the Government was able to evaluate its case for removal, any need for such an approach has diminished greatly at this point several months later, where the Government has had an opportunity to put in motion its considerable informational and investigative resources and the merits proceedings have been completed at the trial level.

The third step of the Mathews analysis examines the Government's interests that are at stake, including fiscal and administrative burdens relating to additional or substitute procedural requirements.  Velasco Lopez at 854.  As in Velasco Lopez, this factor weighs in favor of the petitioner on the record before this Court.  The Government has a strong interest in

protecting against risk of flight and danger to the community, but no legitimate interest in depriving a person who poses neither risk of his liberty.  The additional burden on the Government, which has substantial resources and access to sources of information that are not available to a detainee, of proving the necessity of detention is not substantial here, where the Government has already marshaled and presented its merits case against Mr. Arana.  As the Second Circuit recognized in <u>Velasco Lopez</u>, the Government's paramount interest is "in minimizing the enormous impact of incarceration in cases where it serves no purpose" and in avoiding the significant costs to the public (in terms of financial costs of detaining an individual and lost benefits to the community of the contributions the person could otherwise make) of unnecessary deprivations of liberty.  <u>See Id.</u> at 854, n. 11.

   The <u>Velasco Lopez</u> court did not "establish a bright-line rule for when due process entitles an individual detained under [section] 1226(a) to a new bond hearing with a shifted burden," but held that, "[o]n any calculus," the 15-month period of detention in that case "without a determination that his continued incarceration was justified violated due process."  <u>Id.</u> at 855, n. 13.  In its now-vacated <u>Lora</u> decision, the Second Circuit had held that mandatory detention[2] exceeding the sixth month implicated potential constitutional concerns; as a matter of constitutional avoidance, the court construed the mandatory detention statute as authorizing detention without a hearing for only six months from the date of detention.  <u>Lora v. Shanahan</u>, 804 F.3d 601, 609-09 (2d Cir. 2015), <u>vacated</u> 138 S. Ct. 1260 (2018),[3]  Furthermore, as the

---

[2] Mandatory detention is authorized in certain circumstances under the Immigration and Nationality Act, 8 U.S.C. section 1226(c), which provides that "the Attorney General shall take into custody any alien who is removable from this country because he has been convicted of one of a specified set of crimes, including an aggravated felony."  <u>Demore</u> at 510 (internal quotation marks omitted).

[3] The Court notes that <u>Lora</u> was vacated by the Supreme Court after its decision in <u>Jennings v. Rodriguez</u>, 138 S. Ct. 830 (2018), in which the Supreme Court held that

Velasco Lopez court noted, "[w]here the Supreme Court has upheld detention during the pendency of removal proceedings, it has been careful to emphasize the importance of the relatively short duration of detention."  Velasco Lopez at 852 (citing Demore at 529).  In Demore, while rejecting a petition by a mandatory detainee who had been held for six months, the Supreme Court characterized typical detentions under the statute as short, citing average and median time periods of less than two months for removal proceedings, and a period of four months as representative of proceedings including appeals through the BIA level.  See Demore at 529 ("[I]n 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days . . . In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter."); see also Velasco Lopez at 855, n. 13 ("The Supreme Court has held that noncitizens who have been ordered removed for having committed serious criminal offenses or having a long criminal history cannot be detained indefinitely, and a presumptively constitutional period of detention does not exceed six months.") (citing Zadvydas at 701); Sajous, 2018 WL 2357266, at *10 (finding that "detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months"). Given these considerations and potential parameters, the Court finds that with Mr. Arana's trial-

---

section 1226(c) cannot be interpreted to contain an implicit six-month limitation on detention absent a bail hearing.  However, although the opinion in Lora is no longer binding authority, it continues to carry significant persuasive weight.  See, e.g., Brown v. Kelly, 609 F.3d 467, 476-77 (2d Cir. 2010) (noting that while vacatur by the Supreme Court renders a decision non-binding precedent, the vacated decision remains persuasive authority); see also Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *7 (S.D.N.Y. May 23, 2018), appeal withdrawn, No. 18-2591, 2019 WL 4137822 (2d Cir. May 7, 2019) (finding that "the reasoning of Lora remains strong persuasive authority . . . .")

level proceedings having concluded and his detention having stretched to twice the length of time the Demore Court viewed as typical of agency trial and appeal periods combined, application of the Mathews factors to determine whether Mr. Arana's detention has been so long as to require additional process is appropriate.

Here, Mr. Arana, who has no criminal convictions and is being held in a penal facility pursuant to section 1226(a) under a procedural regimen that placed the burden of proof on the detainee while inevitably hobbling, by virtue of the ongoing detention, his ability to marshal resources to carry that burden. As of the time of the parties' last submissions, argument has not even been scheduled on Mr. Arana's appeal to the BIA, and the time through any further appeals and issuance of a final order of removal will, logically, be substantial. The merits of the Government's case for removal and Mr. Arana's defenses have been adjudicated at the trial level and, as explained above, the Mathews v Eldridge factors weigh significantly in Mr. Arana's favor.[4]

---

[4]     In Sajous v. Decker, the court considered a habeas petition challenging the constitutionality of mandatory detention under section 1226(c). To determine whether the petitioner in Sajous was entitled to an individualized bond hearing after nine months in a New Jersey prison facility, the court applied a circumstance-specific approach using the following five factors to guide its reasonableness analysis: 1) the length of time the alien has been detained; 2) whether the alien is responsible for the delay; 3) whether the alien has asserted defenses to removal; 4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and 5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. See Sajous, 2018 WL 2357266, at *10-11. In considering these factors as they apply to Mr. Arana, the Court notes that Mr. Arana has asserted defenses to his removal, which are currently pending with the BIA and leave open the possibility that he will remain in the country; that Mr. Arana's detention to date vastly exceeds any time Mr. Arana has spent in prison—which is none—because he lacks a criminal history; and that the facility in which Mr. Arana is being held is a penal facility used to incarcerate convicted criminals. Consideration of these factors here further militates against detention without proof that he poses a risk of flight or danger that cannot be overcome by measures other than detention.

The Court concludes that now, at the nine-month mark, where the Government has both the resources and the depth of knowledge of Mr. Arana's case to be able to marshal its evidence and arguments for the propriety of continued detention without substantial difficulty, his detention without Government proof of the need for continued deprivation of liberty has become sufficiently prolonged to warrant an individualized hearing with a shifted burden.  The deprivation of Mr. Arana's interest in his own liberty becomes more substantial with each day of incarceration in a facility for criminals and in the midst of the COVID-19 pandemic, and the burden on his family of his absence becomes ever greater.  The Government has never had any legitimate interest in detaining him unnecessarily, and any valid interest in ensuring his presence for investigation of his case and efficient removal determinations has apparently been served. The Court therefore holds that, having passed the nine-month mark and on the record of his particular case, Mr. Arana is entitled to a new administrative hearing with more robust procedural protections to determine whether there is a need for his continued detention.[5]

The Court finds that a prompt individualized hearing before an IJ, in which the Government bears the burden of demonstrating by clear and convincing evidence that Mr. Arana poses a risk of flight or a danger to the community warranting continued detention, constitutes sufficient and appropriate additional process to safeguard his constitutionally protected interest in his personal liberty.  See Velasco Lopez at 855-56 (concluding that, because "it is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty[,]" a "clear and convincing evidence standard of

---

[5]     The Court is not establishing a bright-line rule as to when an individual's detention pursuant to section 1226(a) becomes sufficiently prolonged such that due process rights are violated and additional procedural safeguards become necessary.  Rather, the Court's determination here is the product of careful analysis of Mr. Arana's specific circumstances.

proof provides the appropriate level of procedural protection" at an individualized bond hearing with a shifted burden regarding the necessity of continued detention pursuant to section 1226(a).)

To the extent that the IJ finds that detention is not required, the IJ must consider Mr. Arana's ability to pay bond and alternative conditions of release when setting a bond. Indeed, consideration of these factors is compelled by both BIA precedent and the Constitution. See Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *12 (S.D.N.Y. July 25, 2018) ("consideration of [an alien's] ability to pay [bond] and alternatives to detention appears to be compelled by BIA case law" and is certainly required under the Due Process Clause); Hernandez v. Sessions, 872 F.3d 976, 991 (9th Cir. 2017) ("[A] bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests.")  Moreover, the Government does not dispute that, if the IJ finds that Mr. Arana does not present a danger to the community, Mr. Arana is entitled to such considerations. See Opp. at 24 (citing Matter of Urena, 25 I. & N. Dec. 140, 141 (BIA 2009)).

Petitioner's Request for an Award of Costs and Attorney's Fees

Petitioner also requests an award of his costs and reasonable attorneys' fees incurred pursuant to the EAJA.  See 5 U.S.C. § 504; 28 U.S.C. § 2412.  "[T]he prevailing party in a civil action against the United States is entitled to attorneys' fees and other expenses unless the position of the United States 'was substantially justified.'"  Brissett v. Decker, 324 F. Supp. 3d 444, 454 (S.D.N.Y. 2018).  A habeas petition challenging immigration detention constitutes a civil action under the EAJA.  Vacchio v. Ashcroft, 404 F.3d 663, 672 (2d Cir. 2005). "Substantially justified" means "justified to a degree that could satisfy a reasonable person[,]"

and the Respondents' position meets this standard if it "had a reasonable basis in both law and fact." Vacchio, 404 F.3d at 674 (citation omitted).

Here, the Court finds that the Respondents' position was substantially justified when the Petition was initially brought, and remained so after the Second Circuit's decision in Velasco Lopez regarding the due process issues raised by an individual alien's detention pursuant to section 1226(a). There is no binding authority identifying a time period by which an individual's detention pursuant to section 1226(a) becomes unduly prolonged, nor clear guidance as to when and to what extent, in the case of unduly prolonged detention, additional procedural safeguards become necessary to remedy the due process violations at issue. Further, there is no binding authority as to what facts are sufficient to substantiate an IJ's finding regarding an individual's dangerousness; such an inquiry is individualized and fact-based. For these reasons, the Court finds that Respondents' position in opposing Mr. Arana's Petition was substantially justified. Accordingly, Petitioner's request for EAJA fees is denied.

CONCLUSION

For the foregoing reasons, Mr. Arana's Petition is granted. Respondents are directed to provide Mr. Arana with a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that continued detention is justified and no alternative to detention will suffice, and at which Mr. Arana's ability to pay and alternative conditions to release are considered to the extent that the IJ finds that detention is not required. Such a bond hearing must be held within 21 days of the date of entry of this Memorandum Opinion and Order. Petitioner's request for EAJA fees is denied.

This Memorandum Opinion and Order resolves docket entry no. 1.  The Clerk of Court is respectfully directed to lift the stay, enter judgment in accordance with this Memorandum Opinion and Order, and close this case.

SO ORDERED.

Dated: New York, New York
        December 14, 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge